## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **PETER JONITES**, individually and on behalf of all others similarly situated, *et al.*, | ) ) ) |
| **Plaintiff,** | ) ) ) No. 05 C 4234 |
| v. | ) ) ) HONORABLE DAVID H. COAR |
| **EXELON CORPORATION**, a Pennsylvania corporation, *et al.*, | ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is Plaintiffs' motion to facilitate notice to the plaintiff class and to certify plaintiff class. For the reasons set forth below, Plaintiff's motion for class certification is GRANTED for the class specified. Plaintiffs' notice to the plaintiff class should be resubmitted with appropriate changes for court approval.

## I. FACTS

Plaintiffs, Jonites *et al.*, are hourly employees of Defendants, Exelon Corporation *et al.*, responsible for maintaining and repairing Defendants' power facilitating structures, transmission lines, and generating facilities throughout northern Illinois. The named Plaintiffs are past and present employees of Defendants who worked as "lineman" and/or repairmen for the benefit of the Defendants. Plaintiffs worked in various locations within Illinois and have different job classifications. Plaintiffs were subjected to Defendant's "Automated Roster and Call-Out System" ("ARCOS") or a "predecessor call out system."

ARCOS consists of a computerized, automated telephone call-out system that allows Defendants to notify employees at any time that they are required to work outside of scheduled work hours. Prior to the implementation fo ARCOS, employees were required to remain on call and respond to a minimum number of call-outs under predecessor call-out systems. ARCOS requires employees, unless otherwise excused, to respond to varying minimum percentages of calls from Defendants, depending on the purported nature of the call.

Plaintiffs claim that all employees under ARCOS or predecessor call-out systems suffer the exact same pay practice violations, including inadequate compensation for time spent on-call and time spent traveling in response to a call out, improper compensation for pay and shift differentials, and improper calculations of the regular rate and overtime for time spent on a call-out.

If an employee does not respond to the required number of ARCOS call-outs he or she will first receive a letter of warning. Plaintiffs allege that thereafter, an employee who does not

meet Defendants' call-out expectations will receive one, three and five day suspensions from work privileges, and will finally be discharged.

Plaintiffs claim that "the effect of the ARCOS system and predecessor call-out systems is that all employees subject to receiving a call-out are effectively precluded from engaging in any activity outside of work that would hinder their ability to immediately respond to ARCOS call-outs." Plaintiff's Third Amended Complaint ¶13. Plaintiffs claim employees must stay close to the telephone in case there is an ARCOS call-out. Plaintiffs are allowed to give alternative contact numbers, including personal or company cell-phones, and were offered company pagers at no cost. Nonetheless Plaintiffs claim they cannot engage in family, social, or other personal activities. Plaintiffs allege that employees "perpetually lie in wait to be called upon at any time to respond to a mandatory call out." *Id*. at ¶ 15.

When Plaintiffs respond to call-outs, they are required to travel directly from where they received the call to their designated work site. Defendants do not compensate employees for travel time in response to such mandatory call-outs. Defendant give Plaintiffs a "two-hour allowance", where Plaintiffs have two hours to report to work if he or she accepts a call-out. Defendants do not include this two-hour call-back allowance in Plaintiff's regular rate prior to calculating overtime for a given pay period.

Plaintiffs are regularly required to work on weekends, including times outside their regular shift. Plaintiffs contend that Defendants have not calculated their overtime pay with the required pay differentials for weekend and Sunday work hours. Plaintiffs further allege that they are often required to perform work for the benefit of the Defendants, such as safeguarding

Defendants' equipment during and through their meal periods, for which they are not compensated.

Plaintiff files suit under the Fair Labor Standards Act ("FLSA"), the Illinois Wage Payment Collection Act, and the Illinois Minimum Wage Law, for alleged wage and overtime violations and unlawful retaliation. Plaintiffs' complaint, originally filed in State Court, was removed to the United States District Court, Northern District of Illinois on July 22, 2005. Plaintiffs now move for class certification and for facilitation of notice to the plaintiff class.

## II.     ANALYSIS

**FLSA**

The FLSA allows for representative plaintiffs to bring a collective action on behalf of themselves and "other similarly situated employees." 29 U.S.C. §216(b). Determination of FLSA collective action certification is subject to a two-step inquiry. *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001) (see also *Forney v. TTX Co.*, 2006 U.S. Dist. LEXIS 30092 (D. Ill. 2006); *Gambo v. Lucent Techs., Inc*., 2005 U.S. Dist. LEXIS 37998 (D. Ill. 2005). The Seventh Circuit has not addressed this issue. While this court is not bound by the decision of other circuits, it does give due weight to their reasoning. *Fuller v. Skornicka*, 79 F.3d 685, 687 (7th Cir. 1996). We find the Tenth Circuit approach reasonable and, like other district courts, use the approach in our analysis. Step one requires that the plaintiffs make a "modest showing that similarly situated employees exist. *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001). Upon meeting this requirement, plaintiffs are authorized to send notice to potential claimants, who may opt-in by filing a written consent. The Tenth Circuit has held that

this "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* Step two, which typically occurs after discovery, allows the defendant to move to deny certification of collective action on more substantive grounds. *Id.* Plaintiffs have the burden to demonstrate that they are in fact similarly situated as the opt-in claimants. The court may review several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.*

As to step one, Plaintiffs have clearly alleged that putative class members were all victims to Defendants' call-out policies, and thus satisfies the preliminary step. In addressing step two, employees are similarly situated when their employment duties are similar. See *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004) (cited in *Forney v. TTX Co.*, 2006 U.S. Dist. LEXIS 30092 (D. Ill. 2006)). Plaintiffs contend they are similarly situated with other "hourly employees" of the Defendants who have spent uncompensated time working for Defendants while "on call" and responding to mandatory call-outs under ARCOS. Plaintiffs are all linemen or repairmen, subject to the same on-call procedures under the computerized ARCOS system, and with the same duties to respond. Defendants claim that the number of call-outs received varies from Plaintiff to Plaintiff, and Plaintiffs work at different locations with different job classifications. However, while some Plaintiffs may receive 20 calls per year and others 100, the response requirements and disciplinary actions are uniform for *each* call. The reporting and response requirements under the computerized system of ARCOS is uniformly applied throughout the different locations, regardless of individual circumstances of each Plaintiff or the

Plaintiffs' other job responsibilities. The fact that Plaintiffs' other employment duties may vary does not negate the relevant fact that their duties under the ARCOS system are the same. Although there will invariably be some discrepancy between the putative class members as to the amount of travel time required and the type of personal activity engaged in, the similarities in the common ARCOS policy, responsibilities and restraints are sufficiently uniform to overcome minor factual variations. In such a case, collective action is fair and practicable. Thus, Plaintiffs subject to the ARCOS system may be considered "similarly situated" as required by 29 U.S.C. §216(b).

Defendants argue that collective action should be limited to those employees who were "required, under ARCOS, to respond to varying minimum percentages of calls...or face progressively onerous discipline, up to and including termination." Plaintiff's Third Amended Complaint, ¶ 10. Defendants assert that employees who were subject to ARCOS, but had never been called or who had been called so infrequently that they never received the minimum number of call-outs to be considered for discipline, are not "similarly situated" as the Representative Plaintiffs. The employees who were not called out, however, may still be subject to restraint in personal activity due to the potential of a call-out ("engaged to wait"), and those who were called-out infrequently were still subject to alleged violations in travel and overtime compensation. There is no evidence that these Plaintiffs knew ahead of time that they would not be called or would be called infrequently. As such, they were subject to similar responsibilities and alleged constraints as those Plaintiffs who were called out frequently. In the present case, while the number of call-outs may differ, the duties, policies and alleged injuries remain the

same, such that the Plaintiffs who were not called out or called infrequently may be considered "similarly situated."

Plaintiffs wish to include in this class both employees subject to the ARCOS system and also those subject to the "predecessor call out system." Plaintiffs state that "prior to the implementation of ARCOS, employees were required to remain on call and respond to a minimum number of call-outs under predecessor call-out systems." Plaintiffs' Third Amended Complaint, ¶10. However, there is no evidence that the predecessor systems and the ARCOS system operate in the same way or impose uniform duties on employees. The fact that Defendants switched systems in 2003 suggest that they were sufficiently different to warrant a change. The differences between the systems may warrant fact-intensive and individualized investigations of each. Thus, past employees subjected solely to the "predecessor call out system" are not similarly situated with the Plaintiffs subject to the ARCOS system, and should not be included in the collective action.

Defendants cite *Skidmore v. Swift & Co.*, 323 U.S. 134 (U.S. 1944), asserting that compensation for time spent "on-call" requires fact-intensive and individualize findings of fact that do not lend themselves to collective action. In *Skidmore*, the Court called for careful scrutiny of "agreements between particular parties, appraisal of practical construction of the working agreement by conduct, consideration of the nature of the service," etc. as a fact-intensive inquiry into different company policies. *Id.* at 137. In *Skidmore*, the Court was distinguishing that case from *Armour & Co. v. Wantock*, 323 U.S. 126 (U.S. 1944) in ruling that "waiting period" may not be uniformly considered "working time" and requires fact-specific inquiry. Because the company, policy and surrounding facts of *Armour* were different than that

of *Skidmore*, the Court asserted that "each case must stand on its own facts." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (U.S. 1944). In the present case, the Plaintiffs are working for the same company under the same ARCOS system and policy. As noted above, the Plaintiffs are subject to a uniform set of rules, duties, compensation calculations, and disciplinary actions under ARCOS. As such, *Skidmore* is inapposite, and employees under ARCOS are similarly situated.

Defendants' argue that Plaintiffs have no standing because the level of restraint suffered by the Plaintiff has not sufficiently interfered with Plaintiff's personal life and activities, citing *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182 (10th Cir. 1989) and *Dinges v. Sacred Heart St. Mary's Hosps.*, 164 F.3d 1056 (7th Cir. 1999). Plaintiffs allege the opposite. The level of restraint, travel compensation, and other such substantive questions are more appropriately addressed in a 12(b)(6) or Rule 56 motion. These questions on the merits are not appropriate for the court to address in this preliminary motion for class certification.

**Rule 23**

The federal Rules of Civil Procedure provide the federal district courts with broad discretion to determine whether certification of a class-action lawsuit is appropriate. *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification and does not examine the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 179 (U.S. 1974). The party seeking class certification bears the burden of showing that the requirements for the class certification

have been met. *Id*. Failure to establish any one of the requirements precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993).

Rule 23 of the Federal Rules of Civil Procedure governs the requirements of class certification. Under Rule 23, a determination of class certification requires a two-step analysis. First, the named plaintiff must satisfy the four threshold requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Second, the action must qualify under one of the three subsections of Rule 23(b).

### A. Numerosity

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Plaintiffs are not required to specify the exact number of class members. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978). An estimation of the proposed class size can be based on common-sense assumptions and estimates. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (D. Ill. 1996).

In the present case, over 400 employees have come forward at the inception of the complaint, and it is estimated that Defendant employs or has employed more than double that number of linemen and repairmen subject to ARCOS or a predecessor call out system. Courts have generally recognized that joinder is impracticable where a class contains more than 40 members. *Johnson v. Rohr-Ville Motors, Inc.,* 189 F.R.D. 363, 368 (D. Ill. 1999) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). Further, the individual damages may be modest, averaging approximately $5,000 to $10,000. Due to the large number of potential plaintiffs, the costs of running individual litigations would be enormous. In cases like this, the Seventh Circuit has ruled that "to require a multiplicity of suits

by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson v. American Consumer Industries, Inc*., 415 F.2d 1326, 1334 (7th Cir. 1969). Plaintiffs' proposed class meets the numerosity requirement of Rule 23.

>**B.** **Commonality**

Rule 23(a)(2) calls for the "existence of at least one issue of fact or law common to all class members." *Meiresonne v. Marriott Corp*., 124 F.R.D. 619, 622 (D. Ill. 1989). The existence of some factual variation among class members will not defeat a class action. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Id.* Plaintiffs assert several common issues of fact, including whether ARCOS prevented employees from using their non-work time effectively for their own purposes, whether Plaintiffs' spent time waiting for mandatory call-out is an integral part of their jobs, whether Plaintiffs' time spent waiting for a mandatory call-out is predominantly spent for the benefit of defendants, etc. These common issues of fact, arising out of the ARCOS system, are sufficient to satisfy the commonality requirement.

However, there is insufficient evidence to show that the "predecessor call out systems" are the same or sufficiently "common" with the ARCOS system to bring about common questions of fact. That is, whether the ARCOS system prevented employees from using their non-work time effectively for their own purposes may be different than whether the "predecessor call out system" did the same. Each issue stated by the Plaintiff is specific to the ARCOS system, and not necessarily common with the predecessor system. For similar reasoning as that given in the FLSA analysis, the "predecessor call out system" does not fall under a "common

nucleus of operative fact" as the ARCOS system. Employees solely under the "predecessor call out system" are not considered part of the class.

>    C.    **Typicality**

Under Rule 23(a)(3), the claims of the class representatives must be typical of the claims of class members. A typical claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Further, "similarity of legal theory may control even in the face of different facts." *Id.*

In the present case, the legal theory is based on compensation violations due to Defendants call-out systems. Employees under the ARCOS system share the same response duties and compensation calculations. Again, if Plaintiffs had known ahead of time that they would not be called-out or would be called-out infrequently, then their restraints and duties may differ. However, because no such foreknowledge was available, employees were subject to the same alleged restraints on personal activity and compensation violations. Although frequency of call-outs may differ, the duties, compensation calculations and restraint in personal activity give rise to claims that share the same legal theory. As such, class representatives under the ARCOS system are typical of class members under the ARCOS system.

>    D.    **Adequacy of Counsel**

The adequacy of Plaintiffs' counsel is not contested. The court finds no reason to question the experience and ability of Plaintiffs' counsel. As such, Plaintiff's counsel is deemed adequate.

### E. Rule 23(b)(3)

Rule 23(b)(3) allows for class certification when adjudication of the class action is more efficient then conducting a series of individual trials, involving essentially the same issues. Because of the large number of estimated Plaintiff class members and the similarity of issues of fact and law predominate over questions affecting individual members, class action is a fair and efficient method of adjudicating the conflict.

Plaintiffs further propose that certifying Rule 23 and FLSA class claims concurrently would be the most efficient and fair method of adjudication. Plaintiff's proposed notice would allow potential class members to opt into the FLSA claim and opt out of the Rule 23 state law claim. Plaintiffs explain in detail the difference between the claims, the need to opt in or opt out, and color-code the different forms. The court finds the explanations and instructions generally clear. However, before granting approval, Plaintiffs will have to remove "predecessor call out system" claims and employees from the notice for both the FLSA and Rule 23 claims.

Because Plaintiffs have satisfied the requirements of Rule 23, class certification for employees subject to the ARCOS system is granted. Notice to plaintiff class should be resubmitted for approval.

**Retaliation Claims**

Retaliation claims do not qualify as class or collective action, as majority of the Representative Plaintiffs are not claiming they were personally subject to alleged retaliatory treatment. This satisfies neither the FLSA or Rule 23 requirements.

**Defendants' Contact With Putative Members**

Plaintiffs ask for a protective order barring Defendants from contacting putative class members, their employees. The Seventh Circuit has held that while the district courts have discretion in this area, it is not unlimited. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000). "An order limiting discovery communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*. The Plaintiffs have not provided any such facts or specific findings. As such, the court declines to enter such an order at this time.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is GRANTED for the class specified. Plaintiff's notice to the plaintiff class should be resubmitted with appropriate changes for court approval.

Enter:

/s/David H. Coar

_____

David H. Coar

United States District Judge

Dated: **October 4, 2006**