**N IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PETER JONITES, individually and on behalf of all others similarly situated,** *et al.*, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 C 4234** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **EXELON CORPORATION, a Pennsylvania corporation,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendants' motion for summary judgment against Plaintiff Class and individual Plaintiffs. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

## I.      FACTS

Plaintiffs are current and former hourly employees subject to receiving callouts under Defendant Commonwealth Edison's ("ComEd") "Automated Response Call Out System" (ARCOS) and ComEd's minimum response rate expectations. ComEd is an electric utility company responsible for maintaining more than 78,000 miles of power lines in Northern Illinois and providing service to the third largest metropolitan area in the United States. There are six different regions in the ComEd service territory, with each region further divided into smaller

geographic zones. Each zone has one or more local areas or "barns" where employees report to work. Defendant Exelon Business Service Company ("BSC") provides "corporate governance services" to Defendant Exelon Corp. and to ComEd, which involves "compensation and benefits" policies.

Plaintiffs are subject to "call-outs", where they are asked to return to work when additional manpower is needed to address emergency work conditions such as weather-related outages, interruptions in customer service, or outages or immediate dangers caused by equipment failures. A "callout" or "call back" refers to a circumstance where the employee has left ComEd's premises or work site, but then returns to his reporting location after being notified of work that needs to be performed immediately because of an emergency condition.

<u>The CBA</u>

Plaintiffs are hourly workers and were represented by International Brotherhood of Electrical Workers Local 15 for collective bargaining purposes. Local 15 entered into a collective bargaining agreement ("CBA") with ComEd, Exelon Corp. and BSC. Article IV of the CBA, entitled "Hours of Work, Overtime and Holidays," defines the "basic work week" and terms under which employees receive overtime, which is paid at a rate of "time and one-half" for all hours worked outside of an employee's normally scheduled, eight hour "basic workday."

The CBA defines the basic work day as a period that "shall normally consist of eight hours of work which shall be consecutive except when time out for meal is scheduled." Art. IV, para. 1, p. 13. Further, "during the regularly scheduled working day, there shall be a regularly scheduled meal period not to exceed one hour, except for employees whose work requires them to work on duty eight hours consecutively, in which case they shall eat at their work location."

CBA, Article IV, para. 21, p. 20. Employees who are scheduled to work an eight-and-one-half-hour day are entitled to receive an unpaid lunch under the terms of the CBA.

Article IV of the CBA provides that employees are paid for travel time if they must travel from their normal reporting location, or barn, to a work location. Para. 20. However, employees are not paid for time spent commuting to and from work locations within their working area. CBA, Article IV, para. 20. The CBA further provides that an employee ordered to remain at a specific location, awaiting a call for emergency work outside scheduled working hours, shall be paid at the applicable rate until release. Article IV, para. 16. The CBA provides that employees who are "called back (with or without previous notice) for work at any time outside of their regular work schedule shall be paid a minimum of two hours straight time pay and call-back allowance of two hours straight time work" unless the time worked amounts to eight hours or more, in which case employees do not receive the call-back allowance. Article IV, para. 18, p. 19.

Article VIII of the CBA provides for an arbitration procedure by an impartial Arbitrator for disputes arising from the CBA that cannot be resolved internally.

ARCOS

In July 2003, ComEd began using an automated computer program, ARCOS, to expedite the callout process and improve callout response rates. ARCOS allows employees to input up to three contact numbers, including cell phones and pagers, as well as other temporary numbers where they can be reached in the event of a callout. ARCOS contacts employees by calling up to three contact numbers. If the employee answers the call, he or she may choose to either "accept" or "decline" the callout. Employees may also input "on the fly" (temporary contact numbers)

into ARCOS if they want to be reached at a different number than the up to three already placed into ARCOS. If an employee does not answer an ARCOS call, the reason is noted and a message is left for the employee. The system then continues to call employees in the order of the callout list, until the requisite number of employees accept the callout.

Employees who do not answer the call have a minimum period of 20 minutes, starting from the time they receive the first ARCOS call, to call back the system and accept or decline the callout. If an employee initially "declined" an opportunity, he or she may contact ARCOS within the 20 minutes to "accept" the callout. If the employee does not respond to the callout after that time, it is generally considered a "decline." However, if the employee calls ARCOS back after the 20-minute acceptance period but before the callout need has been satisfied, the employee may still accept the callout and receive credit for it. When an employee accepts an ARCOS callout, an employee has at least two hours from that time to physically report to their barn, or normal reporting location. Plaintiffs cannot determine whether or when callouts using ARCOS will occur, and ARCOS callouts are not uniformly distributed over time.

ARCOS allows for conditions under which employees are not eligible to receive callouts. ARCOS reports callouts as "excused" and not counted for purposes of total response rate, when employees are "coded" in the payroll system as already working, entitled to a "rest period," on vacation, sick or on a leave of absence.

ARCOS instituted minimum callout response and acceptance rates. Response rates are the frequency to which employees respond to the calls–either declining or accepting the callout. Acceptance rates are the frequency to which employees accept callouts. Minimum response and acceptance rates varied depending on the job and time period. Prior to April 2005, the highest

required response rate was 50%, and the highest required acceptance rate was 10%, for employees who received five or more callouts per quarter. In April 2005, ComEd reduced its stated response requirements from 50% to 25%, and instituted 35% as the highest acceptance rate required. When these minimum percentages were not met, progressive disciplinary action was taken.

Since the implementation of ARCOS, Plaintiffs have engaged in various personal activities, including remodeling existing homes, coaching sports events, visiting friends and families, taking vacation and day trips, camping, hunting, fishing, performing household activities, participating in community events, going to movies and restaurants, attending weddings, watching television, etc. The Representative Plaintiffs had either cell phones or could have obtained cell-phone numbers to input into ARCOS since 2003. Some employees, such as Crew Leaders and "fault team" members, have company issued cell phones. To the extent that some Representative Plaintiffs did not have cell phones, it was admittedly a personal choice by the individual.

ComEd's Contractor Policy Regarding Former Employees Terminated for Cause

ComEd maintains a policy prohibiting former employees who have been terminated "for cause" from working on its property or projects as independent contractors. Individual contractors may hire former ComEd employees terminated for cause, but these employees may not work on a ComEd project or on ComEd property.

In January 2006, Matt Turk, Vice President of Operations at Trench-It Inc., an independent contractor for ComEd, reassigned Plaintiff Michael Hisel, a former ComEd employee terminated under ComEd's callout expectations policy, to a non-ComEd project. Turk

then asked ComEd to make an exception to the contractor policy to allow employees who had been terminated for failing to accept callouts to continue to work for Trench-It, Inc. ComEd declined to change the policy.

Procedural History

When employees began receiving progressive discipline under ARCOS, the Union filed multiple ARCOS-related grievances to contest ComEd's right to implement ARCOS and challenged the disciplinary actions employees had received. The parties were unable to resolve their differences and submitted the dispute to an impartial arbitrator, as required by the CBA. The arbitrator heard the matter in December 2005. The Arbitrator found that the ARCOS system was reasonable and did not violate the CBA.

In May 2005, the union challenged the Award by filing an action in the United States District Court for the Northern District of Illinois, claiming that the Arbitrator erred as a matter of law. On September 30, 2005, the district court dismissed the action, finding that the Arbitrator stayed within the bounds of the CBA and rejecting the argument that the Arbitrator's decision was contrary to public policy.

On July 22, 2005, the instant case was removed from Illinois Circuit Court to this court. In the instant case, Plaintiff Class alleges the following counts in its Third Amended Complaint. Count I–Violation of Fair Labor Standards Act and Willfulness: Plaintiff Class claims that it is entitled to compensation under the FLSA for all hours worked, including time spent while "engaged to wait" on call, traveling in response to a call-out, and during their meal time. Count II–Willful Violation of Fair Labor Standards Act and Willfulness: Plaintiff Class alleges the same claims as Count I, and further contends that Defendants' behavior was intentional. Count

III–Liquidated Damages Under the FLSA: Plaintiff Class seeks liquidated damages for hours worked as outlined in Count I. Count IV–Illinois Wage Payment and Collection Act: Plaintiff Class seeks compensation under the Illinois Wage payment and Collection Act for overtime worked as alleged in Count I. Count V–Illinois Minimum Wage Law: Plaintiff Class seeks compensation for Defendants' failure to pay Plaintiff Class the minimum wage prescribed by 820 ILCS §105/4(a). Count VI–Unlawful Retaliation Count in Violation of FLSA: Plaintiff class seeks compensation, alleging retaliation.

On April 16, 2007, Defendants filed the instant motion for summary judgment. Defendants moved for summary judgment on compensation claims arising out of Plaintiffs Class' "on call" time, meal time, and travel time, as well as Plaintiff Class' claim that Defendants incorrectly calculated regular rate of pay, and illegally retaliated against Plaintiffs.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a

party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

## III. ANALYSIS

A. Meal Period Compensation

Defendants move for summary judgment for the meal compensation claim on the ground that the CBA bars the FLSA claim under Seventh Circuit precedent. In *Leahy v. City of Chicago*, the Seventh Circuit held that the collective bargaining agreement precluded the FLSA claim, where the collective bargaining agreement fully protected the appellants' FLSA rights. 96 F.3d 228 (7th Cir. 1996). In *Leahy*, the collective bargaining agreement between the police officers and the city clearly stated that an officer was entitled to overtime rates for hours worked in excess of eight hours per day. *Id*. The Seventh Circuit then found that if an officer worked more than eight hours in a day as a result of working during a meal period, the employer was required to pay the officer overtime rates for the excess work time. *Id.* The court noted that under the collective bargaining agreement, it is assumed that an officer is generally not working during a meal period that exceeds the eight hour work day, and should be appropriately compensated if an officer actually does work during the meal. *Id.* at 232. As to whether the meal period was compensable itself, the Seventh Circuit held that individual inquires under the collective bargaining agreement's grievance process, and not the federal courts, "is the most efficient way to determine whether an officer's meal period should be compensable work time." *Id*. Over a strong dissent, the majority opinion in *Leahy* concluded that a collective bargaining agreement's overtime provision for overtime pay above the eight hours per day work schedule, together with

a grievance and arbitration procedure that can address disputes over what constitutes

compensable work, was sufficient to preclude a FLSA claim.

The majority opinion in *Leahy* did not mention the Supreme Court's decision in

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (U.S. 1981). In *Barrentine*, the Supreme

Court reversed the Eight Circuit's ruling that submitting a wage claim to a CBA arbitration

process barred the bringing of a FLSA claim. *Id*. at 745. The Supreme Court held that

> The FLSA rights petitioners seek to assert in this action are independent of the
> collective-bargaining process. They devolve on petitioners as individual workers,
> not as members of a collective organization. They are not waivable. Because
> Congress intended to give individual employees the right to bring their minimum-
> wage claims under the FLSA in court, and because these congressionally granted
> FLSA rights are best protected in a judicial rather than in an arbitral forum, we
> hold that petitioners' claim is not barred by the prior submission of their
> grievances to the contractual dispute-resolution procedures.

*Id*. at 745.

The Seventh Circuit was presumably aware of the *Barrentine* decision when it decided

*Leahy*. Against this backdrop, this court must read the Seventh Circuit's ruling narrowly. Judge

Plunkett of this district has suggested that a "reasonable interpretation is that it is appropriate for

employers and employees who define compensable work in their CBA to resolve disputes about

the issue through the CBA's grievance procedure." *Schwertfeger v. Vill. of Sauk Vill.*, 2001 U.S.

Dist. LEXIS 3516 (D. Ill. 2001). However, *Leahy* does not require that the CBA define

compensable work. In fact, *Leahy* specifically leaves this issue to arbitration procedures, noting

that preclusion of the FLSA claim "makes perfect sense in situations where it is difficult to

define precisely what constitutes working time." *Leahy* at 232. While this court recognizes the

tension that exists between *Leahy* and the Supreme Court's ruling that employees should have

access to federal court, and not be confined solely to the arbitration process through their labor union, this court is properly bound by the majority decision in *Leahy*, and any inconsistency between *Leahy* and *Barrentine* is properly addressed to the Seventh Circuit.

In the present case, the CBA provides that "the basic workday shall normally consist of eight hours of work which shall be consecutive except when time out for a meal is scheduled." CBA, Article IV, para. 1. It is clear from the language that the meal period is not considered "work time," as it was separated out from the consecutive work time. Further, Article IV, para. 13 of the CBA provides that if employees work more than eight hours per day, they shall be paid at time and one-half for all hours worked outside of the scheduled hours. Thus, under the CBA if an employee were to work more than eight hours a day as a result of working during a meal period, the employee should receive time and one-half pay for the extra hours worked.

This still leaves the question of whether the meal period should be compensable work time. At issue is whether this inquiry should be left to the individual arbitration procedures set forth in Article VIII of CBA, as *Leahy* dictates, or whether the inquiry of what constitutes compensable work can be taken up by the federal court. In *Leahy*, the Seventh Circuit concluded that individual arbitration under the CBA should be used, because it was "the most efficient way to determine whether an officer's meal period should be compensable work time...[give] a police department of some 12,000 officers in different districts with different shift schedules and different exigencies arising each day that might affect officers' meal periods." In the present case, Plaintiffs are employees of ComEd, an electric utility company responsible for maintaining power lines in Northern Illinois. There are six different regions in the ComEd service territory, with each region further divided into smaller geographic zones. Each zone has one or more local

areas or "barns" where employees report to work and where company equipment, including vehicles, are stored. Like *Leahy*, the ComEd policy is applied in different "districts" or "zones", with different schedules and exigencies that may arise each day. The efficiency reasoning in *Leahy* applies to the present case. Where the Seventh Circuit has concluded that the collective bargaining agreement's overtime provision, together with a grievance and arbitration procedure, was sufficient to preclude a FLSA claim, there is no genuine issue of material fact that the provisions under the CBA at issue satisfy the *Leahy* standard for FLSA preclusion. Therefore, Defendant's motion for summary judgment as to meal period compensation is granted.

B. Travel Time Compensation

Defendants move for summary judgment on the grounds that the CBA precludes Plaintiff Class' travel compensation claim, and further, the claim fails under the FLSA. Defendants rely on *Leahy* and the same arguments above in asserting that the CBA bars the FLSA claim. Given the *Barrentine* reasoning and decision, *Leahy* must not be read too broadly. To interpret *Leahy* as setting a blanket rule that any employee covered by a CBA with an overtime provision is barred from bringing any FLSA claim is too broad. This court declines to extend the reach of *Leahy* beyond the meal compensation claim.

The CBA provides that employees "required to report directly to a work a work location within their working area shall travel to such work location on their own time and at their own expense." Article IV, para. 20. At issue is whether travel time to their regular work location for a callout, outside of regular working hours, is compensable. Under the FLSA, normal travel from home to work is not work time. 29 CFR 785.35. "There may be instances when travel from home to work is overtime. For example, if an employee who has gone home after completing his day's

work is subsequently called out at night to travel a substantial distance to perform an emergency job for one of his employer's customers all time spent on such travel is working time." 29 CFR 785.36. However, "the Divisions are taking no position on whether travel to the job and back home by an employee who receives an emergency call outside of his regular hours to report back to his *regular place of business* to do a job is working time." *Id*. (Italics added). Under federal policy, "such time will no longer be counted as hours worked." The U.S. Department of Labor's Field Operations Handbook, Ch. 31, 31c06(b), Rev. 643 (Dec. 15, 2000). That is, when an employees is called outside of regular hours to travel a "substantial distance" to perform an emergency job, the travel time is working time. However, if an employee is called outside of regular hours to travel to the same, regular place of work, that travel time is not counted as work time.

There is no dispute that when Plaintiffs accept ARCOS callouts, they report to their designated "barns" or normal reporting location first. They are then sent out to the emergency work sites, and are paid for the travel time between their barns and the work sites. The travel time in question is Plaintiff's travel time to their regular place of work for emergency ARCOS callouts. Under the FLSA and federal labor policy, this travel time to their regular place of work is not considered compensable work time, even if done outside of regular work hours. Therefore, Defendant's motion for summary judgment is granted as to the travel compensation claim.

C. On-Call Compensation

Defendant's move for summary judgment on the grounds that the CBA precludes Plaintiff Class' on-call compensation claim, and further, the Plaintiff Class is not entitled to compensation for on-call time under the FLSA. For the same reasons stated in the preceding

section, Plaintiff Class' on-call compensation claim under the FLSA is not precluded by the CBA.

Under the FLSA, working more than 40 hours per week draws premium pay. 29 U.S.C. §207. At issue is whether hours spent "on call" should be treated as work. According to the Supreme Court, the answer depends on whether one has been "engaged to wait" or is "waiting to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134 (U.S. 1944); 29 CFR 785.14.

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 CFR 785.17. The Seventh Circuit has stated that the "regulatory question is whether the employee can 'use the time effectively for personal pursuits'–not for all personal pursuits, but for many." *Dinges v. Sacred Heart St. Mary's Hosps.*, 164 F.3d 1056, 1058 (7th Cir. 1999). In *Dinges*, the Seventh Circuit reasoned that if an employee is allowed to remain at home, but is called away every few hours, he cannot use his time "effectively" for personal pursuits. *Id*. However, where employees "experience less than a 50% chance that there will be any call in a 14-16 hour period, so their time may be used effectively at home and around [the city]," the on-call time did not constitute work time. *Id.* The Seventh Circuit found that a 46% response rate to callouts was sufficient to allow for personal pursuits.

In the present case, under the ARCOS call-out system, employees are called for emergency electricity outages or other emergent situations. ARCOS allows employees to input up to three contact numbers, including cell phones and pagers. Employees may also input temporary contact numbers into ARCOS. Call-outs are location and job-position specific, and

employees are called in inverse order of their total hours of overtime worked based on their barn's overtime lists. If the employee answers the call, he or she may chose to either "accept" or "decline" the callout. Employees who do not answer the call have a minimum of 20 minutes to call the system back and accept or decline the callout. If the employee does not respond to the callout after that time, it is generally considered a "decline." When an employee accepts an ARCOS callout, an employee has at least two hours from that time to physically report to their barn, or normal reporting location.

During their on-call time, Plaintiffs have engaged in various personal activities, including remodeling existing homes; coaching, or otherwise participating in their children's sporting events; visiting friends and family; taking vacations and day trips; camping, hunting and fishing; performing numerous household activities, going to movies and restaurants; watching sports games; as well as a host of other personal activities. The number of call-outs varies depending on the job classification. Most positions received fewer than five chargeable callouts during each three-month quarter. The highest call out average was 16.3 days in a 90-day period. The maximum average call-out was thus one callout per 5.52 days. Further, employees were required to accept at most 35% of the callouts at any given period. That is, they were allowed to decline at least 65% of the calls received without incurring disciplinary action.

These circumstances certainly do not amount to receiving a call "every few hours," which the Seventh Circuit found was too intrusive to allow for personal pursuits. On average, the Plaintiffs were not called every day, were allowed to ignore 50% and decline 65% of their calls, and were given two hours upon acceptance to travel to the regular workplace. Further, Plaintiffs were allowed to use cell phones and pagers, allowing mobility away from home and allayed the

necessity of remaining by a phone. See *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182 (10th Cir. 1989). ARCOS also allowed for "excused time," where Plaintiffs may indicate beforehand that they would not be available for contact due to approved vacation, sickness, overtime rest period, military leave, death in the family, or if they are already working. Thus, Plaintiffs were not limited to their home, much less the work place by the ARCOS system. Plaintiffs were free to, and in fact did, engage in family, recreational and personal activities. Under the facts presented, and given the Seventh Circuit precedent, this court finds that there is no genuine issue of material fact that the Plaintiff Class could, and did, use their time effectively for personal pursuits. Defendant's motion for summary judgment as to call-out time is granted.

D. Calculation of the Regular Rate of Pay

Defendants move for summary judgment on Plaintiffs Class' claim that ComEd incorrectly calculated the regular rate of pay. There seems to be some confusion as to what compensation Plaintiffs' regular rate of pay claims were directed. Defendants identified two areas of compensation: (1) contractual premiums paid for hours worked outside an employee's regular shift (including working on the weekend), and (2) the callback allowance. Plaintiff Class further alleges that Defendants did not properly include the annual bonus and meal allowance in the calculation of regular rate. As to these latter issues, Plaintiff Class raises the annual bonus and meal allowance claims for the first time in their Response to Defendants' motion for summary judgment. It is settled law that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Therefore, Plaintiff Class' regular rate of pay claims

as to annual bonus and meal allowances are not properly before this court. This court will only

address the regular rate of pay claims as to overtime work and the callback allowance.

The FLSA defines "regular rate" as all remuneration for employment paid to, or on

behalf of, the employee, except

> (5) extra compensation provided by a premium rate paid for certain hours worked
> by the employee in any day or workweek because such hours are hours worked in
> excess of eight in a day or in excess of the maximum workweek applicable to
> such employee under subsection (a) or in excess of the employee's normal
> working hours or regular working hours, as the case may be;
> (6) extra compensation provided by a premium rate paid for work by the
> employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth
> or seventh day of the workweek, where such premium rate is not less than one
> and one-half times the rate established in good faith for like work performed in
> nonovertime hours on other days;
> (7) extra compensation provided by a premium rate paid to the employee, in
> pursuance of an applicable employment contract or collective-bargaining
> agreement, for work outside of the hours established in good faith by the contract
> or agreement as the basic, normal, or regular workday (not exceeding eight hours)
> or workweek (not exceeding the maximum workweek applicable to such
> employee under subsection (a)[)], where such premium rate is not less than one
> and one-half times the rate established in good faith by the contract or agreement
> for like work performed during such workday or workweek

29 USCS § 207(e). Under the FLSA, an employer is not required to include work done in excess

of the 8-hour work-day in the regular rate of pay, including premiums paid for work on the

weekends, provided that the premium is at least one-and-one-half times the rate established for

like work done in non-overtime work. There is no evidence that Defendants paid employees less

than one-and-one-half times the regular rate of pay for overtime work, nor does Plaintiff Class

address this issue in its response brief. To the contrary, the CBA provides that employees receive

overtime at a rate of "time and one-half" for all hours worked outside of an employee's normally

scheduled, eight hour "basic workday." Overtime premiums that pay at least one-and-one-half

times the regular rate of pay are not required to be included in the regular rate of pay under the FLSA. Thus, to the extent that Plaintiff Class claims that Defendants incorrectly calculated the regular rate of pay in violation of the FLSA by failing to include contractual premiums for hours worked outside the regular shift, including weekends, summary judgment is granted for the Defendants.

Plaintiff Class also claims that Defendants incorrectly calculated the regular rate of pay by failing to include the callback allowance. The callback allowance provides that employees "called back for work at any time outside of their regular work schedule shall be paid...two hours straight time pay." CBA §18, p. 19. The callback allowance is not paid for actual hours worked, but rather is paid to compensate the employee for showing up to work. At issue is whether such "show up" time is included in the regular rate of pay under the FLSA. Plaintiffs rely on 29 C.F.R. §778.223 in claiming that such "show up" pay constitutes "compensation for performing a duty involved in the employee's job" and not excludable under 29 U.S.C. 207(e). Defendants argue that the callback allowance falls under 29 U.S.C. §207(e)(2), where "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause" is excludable from the regular rate of pay. The U.S. Department of Labor has stated in an Opinion Letter that "employees may, under employment agreements, be guaranteed at least 4 hours' pay for report to work, or for being called back to work outside their scheduled hours. If employees work only two hours but are paid for four hours, the pay for the two hours not worked is not considered to be compensation for working time and may be excluded from the regular rate of pay under §7(e)." Call-Back Pay Plan, Op. Letter, U.S. Department of Labor, Office of Enforcement Policy, June

23, 1998. "Call back" time typically "consists of a specified number of hours of pay" in compensation for responding to calls from their employer to perform extra work. Call back time is not dependent on hours worked, but rather compensates the employee for showing up to a call-out. According to the Department of Labor, this type of compensation is excludable from the regular rate of pay. *Id.* This is specifically contrasted with "on call" time, where employees are paid for specific hours worked while "on call". "On call" compensation is not excludable from the regular rate under §7(e) of the FLSA. *Id.* In the present case, there is no dispute that under the callback allowance Plaintiffs receive two hours straight time pay that has no relation to time worked. This allowance falls under the "callback" payment, where the compensation is for showing up, not for hours worked. As such, the callback allowance is excludable from the regular rate of pay under the FLSA. Summary judgment is granted to the Defendants as to the callback allowance.

E. Individual Retaliation Claims

Defendants move for summary judgment on the individual retaliation claims on the ground that Plaintiffs cannot establish a prima facie case of retaliation. Under the Section 215(a)(3) of the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under [the FLSA]." To establish a retaliation claim under the FLSA, an employee must show that his employer engaged in retaliatory conduct, either through the direct or indirect method of proof. *Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 810 (7th Cir. 2005). To establish a prima facie case of retaliation, an employee must demonstrate that 1) she is a member of a protected class (or performed the protected act of filing a complaint), 2) she is

qualified for the position or, if already employed, has met the defendant's legitimate work expectations, 3) the defendant took adverse employment action against her and 4) the defendants treated similarly situated employees outside of the protected class (or who did not complain) more favorably. *Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot.*, 344 F.3d 680, 692 (7th Cir. 2003).

Plaintiffs' sole argument for retaliation is that Plaintiffs Puleo and Hisel were terminated for refusing to participate in the ARCOS call-out requirements. Plaintiffs contend that since ARCOS call-out system violated the FLSA, termination for refusal to comply with the alleged illegal policy under ARCOS constituted an adverse employment action. This court has ruled that the ARCOS call-out system comports with the FLSA, as the system allowed employees to use their on-call time effectively for personal pursuits. Meeting the minimum response and acceptance requirements under ARCOS is thus a legitimate work expectation. Failure to participate in the ARCOS call-out system shows that Plaintiffs did not meet their employer's legitimate work expectations. As such, Plaintiffs fail to establish prong (3) of the prima facie requirements for retaliation. Defendants' motion for summary judgment as to retaliation is granted.

F. Section 301 Preemption

Section 301 of the LMRA, which provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, has complete preemptive force. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (U.S. 1987); *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495 (7th Cir. 1996). If the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining

agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Id.* Even if explicit terms of the collective bargaining agreement may not be on point, it is a matter of federal contract interpretation whether the words of a collective bargaining agreement create implied rights. *Id.* Although the preemptive effect of § 301 is broad, preemption does not occur in every situation where a collective bargaining agreement comes into play. *Id.* "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.*; *Livadas v. Bradshaw*, 512 U.S. 107 (U.S. 1994).

In the present case, the meal time, travel time, on-call time and regular rate of pay compensation disputes center on interpretation of the CBA. Article IV of the CBA addresses meal time compensation (para. 21-23), travel time compensation (para. 20), on-call time (para. 16) and regular rate of pay compensation (para. 1-6 overtime premiums and shift differentials, para. 13-15 overtime outside regular work periods, para. 18 callback allowance). Because the CBA's provisions address each of these disputes, interpretation of the meaning of the provisions is required. For example, para. 16 of Article IV states that "an employee ordered to remain at a specified location, awaiting a call for emergency work outside scheduled working hours, shall be paid the applicable rate until release." FLSA and federal labor law principles must be used to interpret whether the Plaintiffs were required to "remain at a specified location" and "engaged to wait." Under such circumstances, federal labor law principles are employed to interpret and resolve the dispute. Plaintiff Class' state law claim for overtime under Count IV of the Third Amended Complaint is preempted.

Plaintiff Class further raises a claim seeking compensation for Defendants' failure to pay Plaintiffs the minimum wage prescribed by 820 ILCS §105/4(a). From the facts presented, this court understands the dispute to be not centered on the actual hourly-wage set, but on whether Plaintiffs were paid for all hours worked. Plaintiff Class' argument, as this court understand it, is that Plaintiffs were not paid for all hours worked, and thus their pay fell below the minimum wage. Again, this dispute goes to whether meal time, travel time, and on-call time were considered compensable work time, and whether the regular rate of pay was correctly calculated. As discussed above, these disputes require interpretation of Article IV provisions of the CBA. Plaintiff Class' minimum wage state law claim (Count V of the Third Amended Complaint) is preempted.

G. Proper Defendants

Because summary judgment as been granted in favor of the Defendants, and against the Plaintiffs, on the merits, the issue of proper defendants is moot.


IV.     CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. Because summary judgment is granted as to meal compensation, travel compensation and on-call time compensation under the FLSA, Counts I, II, and III of the Third Amended Complaint are dismissed. Count IV and V are dismissed as preempted by federal labor law. Because summary judgment is granted as to the retaliation claim, Count VI of the Third Amended Complaint is dismissed. This case is closed.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

**Dated: July 30, 2007**